Eugene HOLT, Movant/Appellant,

v.

STATE of Missouri,
Defendant/Respondent.

No. 15040.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 12, 1987.

Melinda K. Pendergraph, State Public Defender's Office, Columbia, for movant/appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for defendant/respondent.

HOLSTEIN, Judge.

Eugene Holt (Movant) seeks post-conviction relief under Rule 27.26.[1] He was previously convicted of second degree murder and sentenced to life imprisonment. That conviction was upheld on appeal. *State v. Holt*, 592 S.W.2d 759 (Mo. banc 1980). The essential complaint here is that movant was denied effective assistance of counsel in the underlying trial because his attorney failed to investigate and call witnesses who would have impeached certain testimony of Roger Dale Jackson. Jackson was the state's primary witness in the murder trial. Jackson testified that he had been hired by movant to kill Patricia Joye Holt, movant's wife. According to Jackson, movant supplied him with a .38 caliber revolver with which Jackson committed the murder.[2]

Our review is limited to a determination of whether the findings of fact, the

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

2. A full statement of the facts is found in *State v. Holt*, supra, and in *Holt v. Wyrick*, 649 F.2d 543 (8th Cir.1981), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982). This is the second appeal of the 27.26 motion, the first being *Holt v. State*, 688 S.W.2d 34 (Mo.App. 1985), in which we remanded the case on the basis of jurisdictional defects.

conclusions of law, and the judgment entered by the trial court are clearly erroneous. Rule 27.26(j), *Futrell v. State*, 667 S.W.2d 404, 405 (Mo. banc 1984).

At the evidentiary hearing on his Rule 27.26 motion, movant called the pathologist who performed the autopsy on Joye Holt. The pathologist testified that the bullets recovered from her body varied in length and shape, one being 1.5 centimeters in length and the other being 1.6 centimeters in length with the tip dented. Both bullets had a diameter of 9 millimeters.

Movant also presented the testimony of the highway patrolman who had retrieved the bullets from the pathologist and who had possession of the revolver which Jackson claimed to have obtained from movant. The patrolman testified that .38 S & W caliber cartridges could be chambered and fired from the revolver. The officer also testified that there are at least two different sizes of .38 caliber cartridges, the longer being the .38 special caliber. He further testified that a revolver chambered for the .38 special cartridge would also accommodate the .38 S & W. However, a revolver chambered for .38 S & W would not accommodate .38 special. The chamber of a .38 S & W weapon could be modified to fire the .38 special cartridge. There was no testimony as to which type of chamber existed in the murder weapon or whether either type of cartridge would accommodate the bullets removed from the victim's body.

Movant produced a copy of the victim's death certificate prepared by the coroner. The death certificate places the time of injury, the time of death, and the time that the coroner declared the victim dead at the same time—11:20 p.m., November 23, 1976. Jackson had testified in the underlying trial that he shot the victim sometime after 5:00 p.m. on the evening of November 23, but did not state the precise time. While the record here and in the underlying trial does not give a specific time of death, there is no other evidence in the case that would place the time of death as late as 11:20 p.m. Movant's own trial testimony indicates that he returned home and found the victim between 9:30 and 10:30 p.m. on the evening of the 23rd. After finding the body, movant went to the home of his minister. The minister said movant came to the parsonage at about 10:30 p.m. The investigating officer's testimony indicates he was called to the scene at about 10:30 p.m.

Movant's trial counsel was called to testify. He did not recall interviewing the coroner or the pathologist regarding the time of death or the variations in the sizes of bullets. However, he testified that he had read the pathologist's autopsy report and questioned the coroner on other aspects of the case. Trial counsel's theory of defense had been to impeach Jackson by showing prior inconsistent statements and presenting evidence of Jackson's intellectual limitations. As a matter of strategy, he had declined to call the pathologist or to go into detail regarding the murder weapon or the bullets to avoid passion which he believed might have been aroused by the "gory details" of the murder and autopsy.

Movant argues that had counsel made such inquiry, the evidence "may" have shown that the murder occurred at a different time and with a different weapon than testified to by Jackson.

In order to establish ineffective assistance of counsel, a defendant in a criminal case is not only required to prove that his counsel did not exercise the customary skill and diligence of a reasonably competent attorney, but he must also demonstrate that he was prejudiced by his counsel's ineffectiveness, and that a reasonable probability exists that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2055, 2068, 80 L.Ed.2d 674 (1984); *Seales v. State*, 580 S.W.2d 733, 736 (Mo. banc 1979). Ordinarily, conjecture and speculation as to what evidence might have shown had it been introduced is not sufficient to establish the required prejudice to a defendant who has claimed ineffective assistance of counsel due to trial counsel's failure to locate, interview and present trial witnesses. *Hogshooter v. State*, 681 S.W.2d 20, 21–22 (Mo.App.1984).

**194**

In this case, we have no idea what the coroner would have said had he been called as a witness by trial counsel. If he had testified that the time of death was 11:20 p.m., such testimony would not only be inconsistent with Jackson, but also inconsistent with the trial testimony of the investigating officer, movant's minister, and movant himself, all of whom testified that the victim was found dead between 9:30 and 10:30 p.m.

We are also left to speculate as to what counsel or a ballistics expert would have found by examining the bullets and revolver. The testimony of the pathologist and patrolman, standing alone, do not show the bullets were fired from a weapon other than the one with which Jackson claimed to have murdered Joye Holt. Stated differently, such testimony would not impeach the credibility of Jackson. Testimony which adds nothing new or beneficial to the case does not support a finding of ineffective assistance of counsel. *Jackson v. State*, 729 S.W.2d 253, 255 (Mo.App.1987). No ballistics expert was called or offered by movant. To support a charge of ineffective assistance of counsel in failing to secure the testimony of a defense witness, movant was required to show what that testimony would have been. *Taylor v. State*, 728 S.W.2d 305, 307 (Mo.App.1987).

Even if the evidence would have further impeached the testimony of Jackson, movant would not be entitled to relief. Where counsel, in making his choices of trial strategy, fails to investigate or call witnesses whose testimony would not exonerate a defendant or demonstrate the defendant's innocence, that selection of strategy is not a foundation for finding ineffective assistance of counsel. *Franklin v. State*, 655 S.W.2d 561, 565 (Mo.App.1983); and *Decker v. State*, 623 S.W.2d 563, 565 (Mo.App.1981).

We hold that in the absence of a showing of a reasonable probability of a different result because of an alleged failure to investigate by counsel, the motion court committed no error in finding that the defendant had not been denied effective assistance of counsel under the Sixth Amendment of the United States Constitution. *Fletcher v. State*, 710 S.W.2d 928, 930 (Mo. App.1986).

The judgment is affirmed.

CROW, C.J., and GREENE, P.J., concur.